UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JERRY LEE CRAIG, SR., <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF SOUTH DAKOTA, in service of the people, official capacity; GRANT FLYNN, Attorney General, Official Capacity; BRENT FLUKE, Warden, <br><br> Defendants. | 4:23-CV-04056-KES <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915(A) SCREENING |

Plaintiff, Jerry Lee Craig, Sr., is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. Docket 6 at 2. Craig filed a pro se lawsuit pursuant to 42 U.S.C. § 1983. *Id.* at 3. The court granted Craig's motion for leave to proceed in form pauperis. Docket 8. Craig paid his initial filing fee. Craig provided a brief in support of his complaint that included a motion to call witnesses. Docket 2 at 4. This court will now screen Craig's complaint under 28 U.S.C. § 1915A.

I.     **1915A Screening**

    A.     **Factual Background**

The facts alleged in Craig's complaint are: that defendants violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights when he was convicted following a 2013 jury trial based on "NO evidence, and a statement inserted to the trial which BY RIGHT should have been inadmissible in court due to the

violation of [M]iranda." Docket 6 at 3-4 (emphasis in original). Craig asserts he is incarcerated "due to a statement gained with out [sic] the issuance of Miranda warning, in an intearigation [sic] where no warning was given, [n]o attorney was allowed-even after request was made." *Id.* at 4. He alleges he has been incarcerated for more than ten years after he "was denied a full and fair investigation, or consideration as to the effect it would have." *Id.* at 5. Craig had a criminal trial that he alleges was "a concerted effort to skirt the law and keep ever so slightly to the side of legal, but in that it failed" for violations of spousal testimonial privilege, *Miranda* rights, and the right to a fair and unbiased trial. Docket 2 at 3.

Craig was arrested on September 6, 2012, when he was "removed from [his] home, employment, family with out [sic] due process." Docket 6 at 5. Craig was convicted at a jury trial in state court on June 4-5, 2013, for "three counts of 1st Degree Rape SDCL 22-22-1(1), three counts of Sexual Contact with a child under the age of sixteen SDCL 22-22-7, and one count of Aggravated Incest SDCL 22-22A-3(1)." Docket 2-1 at 1. He alleges his grand jury indictment and jury trial were improper because no evidence was presented and he did not confess. Docket 2 at 7. He also claims that the criminal investigation into his charges was insufficient because "the police had never interviewed the school, class mates, educational history, or [his] conduct to ascertain validity of the accusations prior to being charged, to have had any basis in fact." *Id.* Craig alleges that "[t]he neighbors were to [his] knowledge, not interviewed, and only the statement of the child was considered." *Id.*

2

Prior to his arrest, Craig was questioned only once about the facts for which he was arrested. *Id.* at 9. Craig appeared at the Kennebeck County Sheriff's Office after allegedly being lied to in order to produce his appearance. *Id.* Craig alleges the officers did not read him his *Miranda* rights and denied his request for counsel. *Id.* Craig attempted to cooperate because he "wasn't and [is] not guilty then and [is] not now." *Id.* Craig claims he answered the questions because he "knew well that they were investigating the accusations against [him] and [he] wanted the opport[]unity to tell [his] side." *Id.* Craig alleges that during the questioning the officers were only interested in his predisposition to guilt, seeking only a confession. *Id.*

Detective Tanner Johndahl, who was present during the questioning, testified at Craig's criminal trial that Craig stated he committed "no crime," but Johndahl stated before the jury that in his opinion Craig's statement was not true. *Id.* Craig alleges that admitting Johndahl's statement at trial was improper because "there was **_NO STATEMENT_** admissible to trial since the [*Miranda*] right was never read, and **_NEVER_** waved [sic]." *Id.* (emphasis in original).

At Craig's criminal trial, he asserts that the State subpoenaed his wife as a witness, in violation of spousal privilege. *Id.* at 15. Craig's wife did not testify, but she was sequestered from the court and the jury, which "removed her expressed support from the presence of the jury to cast doubt in the eyes of the jury members that [he] had family support." *Id.* Craig asserts that "[s]o even as she did not testify, she was compelled to, and removed from the presence of the

3

jury unlawfully, violating the right of spousal privilege." *Id.* Craig claims that it was improper because "[n]o explanation or comment was made as to her absence, no advisory given as to how a wife is a witness against her husband" and that it likely caused the jury to think "[i]f the wife doesn't come in support of the man[], then what are we [the jury] to consider?" *Id.* Craig asserts that because of the state court's subpoena of his wife "[i]n this manner both Due Process and the ethical standards of the court were violated with intent and to pre-impose of an out come [sic] preferred to a court of bias[.]" *Id.*

Judge Tony Porta presided over Craig's criminal trial in 2013, and he had previously presided over the custody hearing of Craig's daughter and her children, one of whom was Craig's accuser. *Id.* at 5; Docket 2 at 8, 11. Craig alleges Judge Porta presiding over the criminal case was a conflict of interest because Judge Porta refused to appoint Scott Kuck as counsel for Craig noting that Kuck had a conflict of interest, but Judge Porta did not recuse himself from the case for the same reason. Docket 2 at 8. Craig claims this was a misuse of power, abuse of discretion, act of malfeasance, and violation of ethics. *Id.* Craig asserts that his appointed counsel, Christopher Dohrer, withheld evidence that would have validated that coercion occurred to the accuser. *Id.* at 11.

Craig claims Judge Porta committed abuse of discretion because (1) he continued to preside over Craig's criminal trial after becoming aware of exculpatory evidence that affected Craig's trial; (2) violated spousal privilege, although Craig's "wife was not called to the stand, the compelling action was

4

made, the right violated and the damage done[;]" (3) allowed evidence in violation of *Miranda* to be presented before the jury that falsely asserted a confession; (4) withheld exculpatory evidence Judge Porta knew from the custody hearing over Craig's daughter and her children; (5) allowed biased testimony from Johndahl; and (6) misused discretion in sentencing to 150 years in custody when Craig "had No prior sex crimes, None present, and nothing to suggest any might occur." *Id.* at 13.

Craigs claims Judge Porta committed malfeasance because Judge Porta was aware of evidence that benefited the defense and excluded the evidence from the court and jury. *Id.* at 11. He states that the evidence relates to the family environment of his daughter's children and would have resulted in a different outcome had the jury heard the evidence. *Id.* The evidence was family counseling history, which Craig provided this court. *Id.* at 10; Docket 2-1 at 3-17. The evidence was "allegedly" excluded to protect the interests of the children, but Craig states that the children were already removed from the home prior to the trial and were "in no danger[.]" Docket 2 at 11. The jury did not learn that the children were removed from the home, which Craig claims was improper. *Id.* Craig claims this violated his right to confront his accuser and denied his right to exculpatory evidence. *Id.* at 10. Craig asserts that these records expose statements that would be considered perjury and that failure to admit the records into evidence violated his right to a fair and unbiased trial by a jury of his peers. *Id.*

Upon entering prison, Craig was in reasonably good health but soon after experienced soreness in his joints. *Id.* at 12. He went to medical at the prison where he was provided a medication called etodolac, which can cause kidney and thyroid disease after prolonged use. *Id.* Craig was warned of the possible side effects but was offered no alternative, because other treatments were not allowed or offered in the prison. *Id.* Craig was not told he had experienced side effects until he developed stage three chronic kidney disease. *Id.* Craig was monitored by medical staff during the process but was not informed until stage three. *Id.*

Craig alleges that his son died during Craig's incarceration, and "[t]hough the prison cannot be blamed for his [son's] death, it can be held accountable for the absence of [Craig's] presence, and perhaps if [Craig had] been around [his son] might not have passed away." *Id.* Craig asserts that while incarcerated he has been separated from his wife of forty-four years, whom he is still in contact with and could still find, know, and preserve quality time with if together. *Id.*

Craig states that labeling him as a sex offender amounts to slander and "any conceived hope to leave [prison] and resume a normal life . . . in the manner before [his] trial, is all but impossible. Sex offenders are held in such contempt by the public as to forbid a normal life as a husband, father, or a citizen and retain any measure of respect." *Id.* at 14.

Craig alleges that "[i]n [his] appeals and effort to bring this [improper conviction] to light, there's been no review as to [his] case by a fair, objective,

and impartial appellate court." *Id.* Craig asserts that Judge Richard Sommers of the South Dakota Fifth Judicial Circuit "rubber stamped" Craig's wrongful conviction, when Judge Sommers stated that the Fifth Judicial Circuit Court "cannot second-guess either the jury's verdict or the South Dakota Supreme Court's decision by reviewing the evidence or testimony offered at Mr. Craig's jury trial to see if a different verdict should have been reached." *Id.* at 14; Docket 2-1 at 2. Craig appealed to the United States Supreme Court and claims his case was "rubber stamped all the way to the U.S. Supreme Court." Docket 2 at 14.

Craig sues the State of South Dakota in its official capacity and Grant Flynn in his official capacity but does not specify in which capacity he sues Brent Fluke.[1] Docket 6 at 2-3. Craig sues defendants for wrongful conviction in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, claiming violation of his right to a fair and impartial trial based on the judge's conflict of interest, a *Brady* violation, a *Miranda* rights violation, withholding evidence, abuse of discretion, spousal privilege violation, and due process violation. Docket 2 at 5-6. He also asserts state-law claims of medical malpractice, slander, and false imprisonment. *Id.*

---

[1] If a plaintiff does not specify the capacity in which he or she sues a defendant, the suit is treated as only including official capacity claims. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Thus, Craig sues Fluke in his official capacity.

Craig seeks "lost wages, legal fees, and punitive damages to compensate for an uncertain future that was in effect stolen from [him] by the intentional actions of malfeasance of the court." Docket 6 at 5. He seeks $5,000,000.00 in punitive damages "to answer not only [for] the malfeasance, but to prevent other acts that would rise to others in kind." *Id.* He also alleges that as defendants "are bad actors that have violated justice and it's incumbent on the court to discipline those accordingly . . . suggest[ing] discharge, demotion, or no further advancement to higher courts." *Id.* Craig seeks "to confront [his] accuser with the charges [he] bring[s] in a wrongful conviction and face them." Docket 2 at 3. He alleges he has appealed his conviction that has been "rubberstamped" and asks for the chance to "[p]ut to a grand jury a trial [that] is supported by the evidence in and of fact." *Id.* He suggests an investigation of the mishandling of his grand jury. *Id.* at 7.

### B. Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663-64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554-63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now screen Craig's complaint under 28 U.S.C. § 1915A.

### C. Legal Analysis

#### 1. Claims Against the State of South Dakota

Craig brings claims against the State of South Dakota. Docket 6 at 2. The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). "Eleventh Amendment immunity extends to states and arms of the state[.]" *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) (internal quotations omitted). Thus, Craig's claims against the State of South Dakota are barred by the Eleventh Amendment and are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

#### 2. Statute of Limitations

"Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint . . . when it is apparent the statute of limitations has run." *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (per curiam) (citations omitted). "[T]he [United States] Supreme Court has instructed courts to apply the most analogous statute of limitations to claims made under § 1983." *Bell v. Gross*, 5:21-CV-05032, 2021 WL 2336936, at *2, 2021 U.S. Dist. LEXIS 107270, at *4 (D.S.D. June 8, 2021) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-68 (1985)). "In South Dakota, a specific statute provides that civil rights actions must be brought within three years after the alleged constitutional deprivation occurred or the action will be

barred." *Bell v. Fowler*, 99 F.3d 262, 266 (8th Cir. 1996) (citing SDCL § 15-2-15.2).

Craig alleges constitutional deprivations that occurred between 2012 to 2013. *See* Docket 6 at 4-5. Craig filed this lawsuit on April 18, 2023. *See* Docket 1. Thus, under SDCL § 15-2-15.2, Craig cannot bring claims for constitutional deprivations that occurred before April 18, 2020. South Dakota "ha[s] not officially adopted the equitable tolling doctrine for civil cases[.]" *In re Estate of French*, 956 N.W.2d 806, 811 (S.D. 2021) (citing *Anson v. Star Brite Inn Motel*, 788 N.W.2d 822, 825 n.2 (S.D. 2010)); *see also Bourassa v. United States*, 581 F. Supp. 3d 1188, 1198-1200 (D.S.D. 2022) (discussing the South Dakota equitable tolling standard as applied to a *Bivens* claim). "The threshold for consideration of equitable tolling is inequitable circumstances not caused by the plaintiff that prevent the plaintiff from timely filing." *Estate of French*, 956 N.W.2d at 811-12 (quoting *Anson*, 788 N.W.2d at 826).

Here, Craig makes no allegations of inequitable circumstances that prevented him from timely filing this lawsuit. He claims that he was aware of the alleged errors related to his criminal conviction since the trial occurred. *See* Docket 2 at 3. Thus, he makes no showing of inequitable circumstances that prevented him from bringing claims within the statute of limitations.

This court construes Craig as bringing four sets of claims in his complaint from conduct that occurred between 2012 to 2013. Construing Craig's claim liberally, he alleges a Fourth Amendment malicious prosecution claim based on his 2013 criminal trial. *Id.* at 9. He brings claims for violation of

11

his Fifth Amendment for admitting into court evidence obtained in violation of his *Miranda* rights and violating the spousal testimonial privilege that occurred during his 2013 criminal trial. *Id.* at 9, 13; Docket 6 at 4. He brings claims for violation of his Sixth Amendment right to an impartial trial based on an alleged judicial conflict of interest, lack of police impartiality, inability to confront his accuser, and prejudicing the jury by sequestering Craig's wife that all occurred in 2013. Docket 2 at 13; Docket 6 at 4. He brings a claim for violation of his Fourteenth Amendment right to due process for a *Brady* violation and incarceration and removal from his family allegedly without due process in 2012 to 2013. Docket 2 at 13; Docket 6 at 4. More than three years have passed since 2012 to 2013, and Craig's four civil rights claims for violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights are properly dismissed under *Myers*. *See* 960 F.2d at 751 (citations omitted); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense[.]"). Thus, Craig's claims for violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Official Capacity Claims for Money Damages

Craig brings claims against Flynn and Fluke in their official capacities. Docket 6 at 2. Flynn worked for the South Dakota Attorney General's Office, and Fluke was the Warden of the Mike Durfee State Prison under the South

Dakota Department of Corrections. *Id.* Craig brings claims against all defendants in their official capacities. *See* Docket 6 at 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and thus amenable to suit. *Id.* at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Here, Craig requests both money damages and injunctive relief. Docket 2 at 3, 7. The state of South Dakota has not waived its sovereign immunity. Thus, Craig's claims against Flynn and Fluke in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 4. Unlawful Incarceration Claim

Craig alleges that he has been unlawfully incarcerated. Docket 2 at 3, 5-15. "[I]n order to recover damages for [an] allegedly unconstitutional conviction or . . . for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must show that the "conviction or sentence [was] reversed, expunged, invalidated, or impugned by the grant of a

13

writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 489 (1994). Because Craig has not shown that his "conviction or sentence [was] reversed, expunged, invalidated, or impugned by a grant of a writ of habeas corpus[,]" his claims for unlawful incarceration are barred by *Heck*. *Id.*; Docket 2 at 3, 5-15. Thus, Craig's claims for unlawful incarceration are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 5. Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Craig's official capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

Construing Craig's complaint liberally, Craig brings a claim against Fluke for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment with regard to his kidney disease. Docket 2 at 12. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'

. . . proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estate of Rosenberg,* 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman,* 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman,* 114 F.3d at 784 (quoting *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995)). To be liable

15

for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Craig does not state sufficient facts to show that Fluke was deliberately indifferent to serious medical needs. Docket 2 at 12. Craig provides sufficient facts to show that he has a serious medical condition of kidney disease. *Id.* But Craig does not provide any facts showing that Fluke knew of Craig's serious medical need or was aware of it. *Id.* Craig must allege that Fluke participated in the constitutional violation or that the constitutional violation resulted from Fluke's failure to train or supervise. *Parrish*, 594 F.3d at 1001. Craig fails to assert any facts showing Fluke's personal involvement or failure to train. *See* Docket 2 at 12. Thus, Craig's claim regarding deliberate indifference to his serious medical needs is dismissed without prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Craig alleges an injunctive relief claim against Flynn. Craig's complaint is unclear as to what relief he requests from Flynn. Craig generally requests a new trial and investigation into the process of his 2013 criminal trial. Docket 6 at 5, 7. But the relief Craig requests cannot be awarded. United States District Courts are courts of limited jurisdiction. The *Rooker–Feldman* doctrine recognizes that, with the exception of habeas corpus petitions, the lower federal courts lack subject matter jurisdiction over challenges to state court

16

judgments. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 416 (1923). The United States Supreme Court has exclusive federal jurisdiction to review most state court judgments. *Feldman*, 460 U.S. at 486. Craig is asking this court to invalidate his conviction through a new trial, which is not permitted relief under a 42 U.S.C. § 1983 action. If this court were to grant the relief he seeks, it would effectively nullify the state court's actions. While he casts this action as a claim for deprivation of his rights under § 1983, this is insufficient to circumvent the *Feldman* bar, because what Craig really seeks is a review of a state court judgment. *See Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir. 1990). Accordingly, this court lacks subject matter jurisdiction over Craig's official capacity claim for injunctive relief against Flynn.

### 6.     Strike Under 28 U.S.C. § 1915(g)

The court finds that Craig's complaint fails to state a claim upon which relief may be granted. Section 1915(g) states as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Because Craig's complaint is dismissed for failure to state a claim upon which relief may be granted, this dismissal will count as a strike.

Thus, it is ORDERED:

1. That Craig's claims against the State of South Dakota are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

2. That Craig's Fourth, Fifth, Sixth, and Fourteenth Amendment claims against defendants are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3. That Craig's claims against Fluke and Flynn in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

4. That Craig's claims for unlawful incarceration are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

5. That Craig's Eighth Amendment deliberate indifference to serious medical needs claim against Fluke is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

6. That Craig's official capacity injunctive relief claim against Flynn is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

7. That Craig's state-law claims of slander, medical malpractice, and false imprisonment are dismissed without prejudice under 28 U.S.C. § 1367(c)(3), without considering the merits of the claims, because the court dismissed all actions under which it had original jurisdiction.

8. That this action constitutes a strike against Craig for purposes of the three-strike rule under 28 U.S.C. § 1915(g).

9. That Craig's motion to call witnesses, Docket 2 at 4, is denied as moot.

Dated August 29, 2023.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE